Are the attorneys for the next case present? They are. Good morning. Please be seated. Madam Clerk, will you please call the third case? 112467, People v. Daniel Welch. Okay, will the attorneys please step up to the podium? Tell the court your name, who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning. My name is Emily Hartman with this Office of the State Appellate Defender, and I represent Daniel Wlecke. The argument should take about 10 minutes unless the court has questions. Very good. Good morning, counsel. Good morning, Your Honors. I'm Heather Farncroke here on behalf of the people of the State of Illinois, and my argument should be the same. Very good. Thank you. Ms. Hartman, why don't you proceed with your argument? Thank you, Your Honor. Again, Emily Hartman for Daniel Wlecke. Although there were a number of reversible errors discussed in Mr. Wlecke's opening brief, due to the limited time, I'd like to focus today on Issues 1 and 3. Issue 1 was that the State failed to prove Mr. Wlecke guilty beyond a reasonable doubt of compliance with the Sex Offender Registration Act for failing to report weekly while lacking a fixed residence. Issue 3 was that the trial court erred in allowing the State to admit the circumstances of Mr. Wlecke's arrest in order to argue for his guilt. The Sex Offender Registration Act requires that an offender who lacks a fixed residence report weekly. Mr. Wlecke reported to the Chicago Police Department to register as a sex offender three days after he was released from prison, as required by law. The Chicago Police turned him away, refusing to take down any information from him because he did not have a State ID. Six days later, he was arrested for failing to register as a sex offender. A week is seven days long. Therefore, the State did not and could not prove that Mr. Wlecke did not report weekly. The State also failed to prove that Mr. Wlecke lacked a fixed residence. The law is clear. A fixed residence only requires a place where an offender can stay for five days out of a calendar year. Here, Mr. Wlecke provided the Chicago Police with two addresses he was staying at. 820 South Damon, which is the Jesse Brown VA Medical Center, and 4928 West School, where he could stay with friends. On the State charge, there were two counts. Correct. One, failing to register while lacking a fixed residence, and two, failing to register a temporary or a fixed residence with the police department. Correct. Were these asserted in the alternative? Yes, the State argued both. Well, they argued both, but can both be true? No. They couldn't both be true because one would require a fixed residence and one would require definitive proof of lacking a fixed residence. So there's no way that they could have been guilty of both. That would have been, but in this case, since he was acquitted of the other charge, it's sort of a moot point. Because the definition of fixed residence is so generous, either or both of the addresses Mr. Wlecke gave could have been a fixed residence. But there is no evidence to introduce that he was not staying at either the 820 South Damon address or the 4928 West School address. Lacking a fixed residence is an element of the offense that the State is required to prove beyond a reasonable doubt. Under the Second District's decision in Peterson, that is interpreted in tandem with the offender's duty to sort of give his address. So the State would just have to prove that he lacked a fixed residence at either of the addresses that he gave, that he sort of said he was staying at. Well, the State argues that when he showed up at the police station on Monday to register, it was up to him when the police officer said your temporary IDOC identification is not valid for purposes of registering an address. It was up to him to say, well then, register me as a homeless person. That is incorrect. Both the Sex Offender Registration Act and the State Police Regulations implementing the Act put the duty of completing the registration on the registering agency, which in this case is the Chicago Police Department. If you look through the regulations, it lists a lot of duties that the police officer needs to comply with. For example, taking fingerprints, writing down, if it is in fact somebody whose address isn't satisfactory, writing down every place that they're going to be staying and that they've stayed for the past week. Taking down, for example, websites that the person posts on or visits or has control over. So all of these things are duties that the Chicago Police need to do to complete the registration. But at the same time, there are no duties placed on the person other than to report, I'm here to register. As far as which paperwork to do and how to actually take that information down, that's all on the police. So the State was incorrect in asserting that it was Mr. Wolacki's duty to tell the officer how to do his job. If there are no more questions about the reasonable doubt, I'll move on to the other crimes argument. Proceed. The State sought in this case and received permission to introduce circumstances of Mr. Wolacki's arrest in order to ostensibly show why he was arrested. The testimony was that he was arrested while walking down a roadway at a forest preserve intoxicated. He was carrying binoculars and told the arresting officer that he was going to people watch because he liked to look at girls. The court allowed the State to introduce his evidence to explain why he was arrested, even though it was not at all relevant to the charge that he was on trial for. And it was not relevant to what he was actually arrested for, which was failure to register as a sex offender. The State proceeded to... You know, when you refer to this as other crimes, I mean, he was intoxicated and he had some binoculars. Is this another crime? The jury doesn't know if it's a crime, and I don't know if it's a crime or not. But other crimes is a shorthand to refer to bad character evidence, bad acts, anything like that. It's just simpler than this long string of long explanation. Even though it was admitted for a limited purpose, the State used it for a non-limited purpose by arguing in both opening and closing arguments that Mr. Wolacki was a bad person and deserving of punishment because of his activities. The jury was not given a limiting instruction, so the jury wouldn't know how to use this evidence, wouldn't know to only use it for the limited purpose. On top of that, the State also embellished the circumstances of his arrest and added unsavory made-up details such as hiding in bushes and leering at girls that weren't true. This is prejudicial because the jury would have certainly been influenced by it, which is evident from the fact that the State was influenced by it. In its brief, the State uses unsavory adjectives such as creepy to describe the events and has a long argument explaining that the purpose of the Sex Offender Registration Act is to prevent this behavior, which is not relevant to the issue in the brief, but just demonstrates how prejudicial the evidence was. If there are no more questions, I'd like to reserve the rest of my time for rebuttal. Thank you, Counsel. Good morning, Your Honors. I'm Heather Farncroft here on behalf of the people of the State of Illinois. First, I'd like to clear up some confusion I think that comes from Counsel's argument. This statute needs to be viewed in one piece. It's an administrative statute, and the statute has certain requirements for sex offenders. His duty was to register. Registration precedes reporting. Counsel is putting the cart before the horse. You have to register before you can report. But if you show up at the police station and truly you don't have anywhere to live, and so you say, I don't have any identification, I don't have anywhere to live. The police officer is going to register you as someone, a sex offender lacking a fixed residence, right? You don't have to ask for it. In that situation, if a person shows up and says, I'm a homeless person. Says, I don't have any identification. That's a different question, though, because not having identification doesn't make you homeless. This defendant had three addresses. He had the VA hospital, which they claimed he was living. He has the School Street address, which he told officers when he was arrested he was staying with friends. And in the PSI, in the record, he states, I had a roommate, Richard Joff, and I lived on Belmont. Gives the address. Wasn't that before he went to prison? No, before this arrest. In the PSI it says that's where he was living. So that's three addresses, but no ID. And part of his duty under the statute is to have documentation of where he's staying. So again, he shows up. He says to the police officer, I'm staying with friends on School Street. That's where I'm living. He doesn't have anything with him to prove that to the police officer. He gets turned away. How is that consistent with the purposes of the Sex Offender Registration Act, to turn him away, let him loose? Because his duty is to show up with documentation. The statute requires his body and documentation. How can an officer register somebody with no proof of where he's staying? What's the most onerous reporting requirement under the act? My opinion? What's the most onerous reporting requirement? It's for a person lacking a fixed residence, right? They have to show up every week. They have to show up there every week and say, here's where I've been staying for the past seven days. That's the biggest burden on a sex offender. For sure there is a burden on sex offenders, and the legislature has decided that there should be, that he should have a duty, a person coming out of prison with a sex offense, a felony sex offense in their background. There are certain requirements, minimal requirements, that he must meet. Yes, he was told where to go and what to do. And based on his statement, we know he wasn't confused. When he was arrested, he didn't say, I didn't know where to go. I didn't know what to do. I had no place to live. I'm homeless. No, he said, I'm sorry, I didn't complete my registration. I know I have to go to the DMV on Elston and get a state ID. I showed the officer my temporary IDOC card, and he told me what to do. This guy knew what to do. Where is it in the form that Mr. Walecki went over before he was released from prison where it says, you know, this identification card we're giving you is not valid for registration purposes? I don't see anything here about the identification card, but we know from the testimony of Ms. Chavera at the jury trial that that was explained to him, that he was getting a temporary IDOC card. But the point is, he knows he's getting a temporary identification card. Where does the form tell him, you can't use this to register? I don't see where that's on the form, but that was obviously explained to him because he knew. He knew he had a temporary IDOC card, and he knew he needed to get a state ID in order to register. Well, he showed up at the police station with the temporary ID. How does that show he knew it wasn't valid? He says, I'm staying at 820 South Damon. Well, I think that happens a lot. I think that a lot of sex offenders show up the first time they're registering perhaps, the second time they're registering. I have no idea it was in this defendant's mind, but it was made clear to him, and he's not challenging the idea that he wasn't on notice that he had to get an identification card. What he's challenging is that he somehow was supposed to be reporting weekly when he had not even registered. He couldn't register. The police wouldn't let him finish the registration with the temporary card. So just taking that a little further. So you show up with the temporary card. You don't know how long this temporary card is going to be good for. There's nothing on the form. There's nothing on the card that says, hey, this temporary card is only good for five days, and in that five days you have to do something. He shows up with his temporary card. The cop turns him away, and what's he supposed to do then? He's supposed to go get a state ID card, which is either. Where does it say that? He was told that. We can presume from the record that he was told what to do based on how Shavera testified before the jury. It was explained to him. These requirements were read out loud. He knew his ID card was temporary. He said that, and the police officer testified. He told the defendant that the ID card, IDOC card, was not valid for purposes of registration. He was told where to go. He was told what to do. An ID card is either free or $1. What do you have to have to get one? What does the Secretary of State require you to have to get a state ID? There's a whole list of requirements. A whole list of requirements. Yes. So he's released from prison on Friday, gets the late bus in. He shows up on Monday. Police officer says, no, this is no good. Go get a state ID or a passport and bring it back. So the Secretary of State requires him to have something with his signature on it, like a bank check canceled within 90 days. He's been in prison for the last year, so not likely to have that. They need utility bills at the address where he says he lives. Not likely to have that. So he's clearly not likely to have any of this information that would enable him to get a state ID. I keep going back to why don't the police, when a sex offender who they want to keep tabs on, shows up with an invalid ID, nothing to show where they're staying, say, you must report here every week until you come back with a valid ID. I'm going to register you as a person lacking a fixed residence. See you next week. Your Honor, respectfully, that would be a question for the legislature. This is just not required under the statute. What's required under the statute is that he register with valid ID, and once he's registered in the database, then whether and how he reports is decided, whether he reports weekly or 90 days or every year, that follows. And because this defendant did not show up that day and say I'm a homeless guy and I don't know where I'm going to stay, the police officer did not go that route of viewing him as a homeless person. And based on the record, I don't think he should be viewed as a homeless person. He has three addresses. Where is the proof that the state presented at trial that said between June 11th and June 20th, those nine days, he didn't spend five days on School Street with his friends? We didn't have to prove that, Your Honor. We had to prove he didn't register. We put on the police officer who testified that he came in and did not complete registration and didn't return within that seven days, and that's the proof. It was only six days later he was arrested. Six days after he was released from jail. We start counting after he's released. We don't start counting from Monday when he showed up and didn't complete registration. That's the example the prosecutor argued at trial of a person who goes to get a license and stands in a lobby and then leaves and gets arrested on his way home and says, but I was there. I was standing there. He didn't complete the registration. And that minimal requirement is on him under the statute. He didn't make a good faith attempt to try to register. Correct. Correct. He shows up, gives them what he's received from the Department of Corrections. They turn him away. That's not a good faith effort. He's not in the database, and the purpose of the statute is to get these guys in the database so we know where they're living and where we can follow up with them. And having him with a temporary IDOC card with an address that is not verified, Ms. Shavira testified that the addresses are never verified before they leave IDOC. But as has been pointed out, the whole purpose is to keep up with sex offenders. Yes. So if they simply register them, tell them to report once a week, don't they keep track of where they are? If the statute were designed that way, could that potentially work? Maybe. But the way it's designed and the way it's working is to have sex offenders get a valid identification. It's cheap. It's easy. If this guy was staying at the VA hospital, he would have had medical records or something, some sort of documents he would have taken. You say a VA hospital can't be a fixed residence, right? Yes, I do. We can hypothetically say he has a fixed residence. It doesn't matter if he has a fixed residence or not. He didn't register it. Counsel gets this court turned around with the briefs and hear an argument talking about we didn't prove he was staying here or staying there. We didn't have to prove that. We had to prove that he didn't register, that he didn't. The policeman wouldn't let him register. Because he did not. He went there to register. He didn't have whatever address that IDOC gave him. There's nothing that tells us that he wasn't there. There's nothing that tells us that that isn't a legitimate address. The cop just wouldn't take it. Because under the statute, Your Honor, respectfully, you have to have your body and documentation in order to register. He didn't have the proper documentation. He had the IDOC identification card, and as my colleague has pointed out, when you get out of jail, when you get out of prison, the likelihood that you're going to have a utility bill or a bank account or any of those things is remote, and it's going to take a while to establish those things. So saying, go to the Secretary of State and get an ID card, when you're standing at the police department with your IDOC card saying, this is the address that IDOC gave me, this is the one place that I'm going to have contact with on a regular basis as I'm in this program there, you'll be able to find me there, I don't see how that doesn't meet the burden. Because the statute says you must have a valid identification, a state ID. Let me just stop you there. You get a piece of paper from some official, a card from some official IDOC. They have control over you. You're a prisoner. You have no control. And they give you something, and it's called temporary ID. Don't you have the right to believe that that's valid? Your Honor, his temporary IDOC card, it's just not an issue here. Whether that's a proper procedure or if the, I mean, the defendant's not challenging. It's not a valid ID. Don't you have the right to believe that if some government official gives you something that says ID on it, that it's valid, even if it is temporary? We know from defendant's statement that he knew it was a temporary ID. ID, right. Yes. And he goes to the cops and he says, this is my temporary ID. And they say, no, we're not taking that. As a person who doesn't work in the prison system, I'm guessing that a lot of people perhaps give one address and they end up going to another address. They require the valid ID to come once you're out. I have no idea why it's done that way. But under the statute, the officer did nothing wrong here. He wasn't making up rules. He wasn't sending people away. He was sending sex offenders back on the street without just saying, see you when I see you, instead of saying, come back here every week until you've got a state ID to show me a valid address. He's sending them back on the street. Doesn't that frustrate the purposes of the act? The officer sent the defendant out to do what was his duty to do, his legal obligation, which was to get a state identification and come back and register himself in the system. And at that point, the reporting that would follow, whether he's coming every week or every 90 days or every year, would kick in. So under the statute, the officer did exactly what is expected. He did not make up his own rules. He did not send this guy away for failure. He wasn't sent in a bureaucratic black hole. And we know this from his statement. His statement wasn't, I didn't know what to do. I didn't know where to go. Poor me. I have no idea. I thought my ID was a valid ID. No, he said, I know. I know. I'm sorry. I know where I'm supposed to go. I know what I'm supposed to do. He just happened to get arrested within that same week, unlucky guy, before he did what he presumably would have done, which is go and get his state ID and get himself registered. I'll move on to the other issue that counsel spoke of, the circumstances of his arrest, which I'm just alluding to. This was proper. The court heard argument in a motion in limine, and the court weighed the probative versus the prejudicial value of the circumstances. And there certainly was not an abuse of discretion when these circumstances were explained to the jury. There would be no other explanation for why this guy was stopped and his name was run. Why did they have to say anything to the jury other than the Park District Officer noticed him stumbling, apparently intoxicated, crossing a roadway? Why did they have to say anything? Ostensibly the state said, we have to be able to explain to the jury why he was stopped. What does carrying binoculars and then the argument about hiding behind bushes, that wasn't supported by the evidence. Leering at girls wasn't supported by the evidence. Certainly natural inferences, Your Honor. That's not using it to explain the circumstances of the arrest. It's using it to dirty him up before the jury. But it's not improper if it's a natural inference based on the evidence, and that's what it was. And the court heard this evidence, and the court made the decision to allow these circumstances in. They had just seen him, and he wasn't stumbling, and he wasn't near any pool, and he wasn't near any bush, but he had a pair of binoculars. They couldn't have arrested him for that. Well, they didn't arrest him until they ran his name and found he wasn't registered. They didn't arrest him based on his behavior. Well, they couldn't have stopped him. And his behavior wasn't criminal, and all the cases that counsel cites to in her brief involve other crimes. This was not a crime. It was suspicious behavior. He was stopped. He was questioned. His name was run, and then he was arrested. The court's concerned about the circumstances that came out before the jury, but the jury was also told specifically that these circumstances were not to be considered. In fact, in the closing argument, defense counsel said it has absolutely nothing to do with the case. Make sure you remember he's not being charged for the circumstances of his arrest. Make sure you remember the fact that he's hiding behind bushes, looking at girls in swimsuits. It has nothing to do with this case. The jury was instructed that way. The jury was not prejudiced, we know, because the jury came back with a not guilty on one count and a guilty on the other count. This was a thoughtful jury that asked for. You couldn't have a guilty on both counts. But the way the counsel argues this in her brief, that we somehow were, you know, jurying this defendant so that they would just send him away forever, that there's just no evidence of that. This jury was thoughtful. They asked for definitions. They considered the evidence. They were told not to consider the circumstances of his arrest in terms of the crime he was charged for. And there's no reason to believe that they did so. I think the bottom line here, Your Honors, is that this defendant received a fair trial. It wasn't perfect, but it was a fair trial. There's no evidence that he was prejudiced by this, by the circumstances. And I think, if there are no other questions, I'll conclude. In the light most favorable to the people, this jury could have reasonably found that this defendant did not have a fixed address, he did not register, and he did not report weekly. And, therefore, we ask this Court to affirm his conviction. Thank you. Thank you. Ms. Hartman, some brief rebuttal? Two points, Your Honors. The State's interpretation of the Sex Offender Registration Act removes the requirement that all criminal liability requires a voluntary act. So if somebody shows up at the police station to register, I'm here, ready to register, and the police turn them away, the lack of registration is not a voluntary act. Mr. Leckie doesn't have the power to put himself in the database. So the fact that he's not in the database has to be looked at in light of the fact that he can't get in the database unless the police let him. Second, the statute, and I think it's 150-3 of the Sex Offender Registration Act, requires documentation of positive ID, which is not defined as a state ID, of the registering address. So the identification requirement applies to the charge he was acquitted of, for example, a charge of not registering within a few days of establishing a residence. The charge that is actually at issue here is lacking a fixed residence and failing to report weekly does not have an identification requirement. So much of the State's argument is based on something that's just not relevant to the in-state case. Mr. Leckie's statement does not really do anything to help the State because it's based on Officer Meters' statement to him. So although Mr. Leckie says, yes, I know I needed to go get ID, he's based on what the police told him. But it's not based on the law. The law requires positive ID. I don't know that the State police would interpret it to require an actual state ID, which Your Honor noted is very difficult to get. The IDOC ID may be sufficient because it's not really an issue in this case. It wasn't discussed in the briefs. But this is a simple case. He did report weekly. He reported, ready to register, here I am. And the police officer did not take down any information from him, did not take his fingerprints, take his photograph, any of the duties that are imposed on the officer by the act. He did nothing but turn him away. And on top of that, he was convicted of this while lacking a fixed residence. Peterson holds it is something the State needs to prove. He gave the State several addresses, all of which could have been fixed residences. And like the police in Peterson, the police or the State's investigator needed to go out and verify that he wasn't staying there to prove that he lacked a fixed residence. Lastly, with regard to the other crimes argument, defense counsel's argument is not an instruction from the court. So if defense counsel said something in closing, that doesn't amount to a limiting instruction from the court. And for the reasons argued today and stated in Mr. Vilecki's opening brief, appellant respectfully requests that this court reverse his conviction or in the alternative remand his case for a new trial. Thank you, Your Honors. Thank you, counsel. I would like to compliment the attorneys on their arguments and their briefs. This matter will be taken under advisement, and this court stands in recess.